FILED
COURT OF APPEALS
DIVISION II

2013 SEP 17 AM 8: 38

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Personal Restraint Petition of | No. 42377-4-II |
| LARRY A. MOOREHEAD, | |
| Petitioner. | UNPUBLISHED OPINION |

FORBES, J.P.T.[1] — In this personal restraint petition, Larry A. Moorehead argues that

his counsel was ineffective for failing to conduct an adequate investigation and for failing to call

a rebuttal expert when his special sex offender sentencing alternative (SSOSA) was revoked.

Because Moorehead fails to prove both deficient performance and prejudice, we deny the

petition.

### FACTS

Moorehead pleaded guilty to the crime of first degree child molestation in 2005. The pre-

sentence investigation report and a psychologist, Dr. Kevin McGovern, recommended that

Moorehead be allowed to complete a special sex offender sentencing alternative (SSOSA)

outpatient treatment program. In July 2005, the court imposed a 68-month sentence, with 180

days to serve in confinement and the remainder suspended under a SSOSA. The SSOSA

---

[1] Judge Jennifer A. Forbes is serving as a judge pro tempore of the Court of Appeals, Division II, under CAR 21(c).

required that Moorehead undergo and successfully complete an outpatient sex offender treatment program. After his confinement, Moorehead began a treatment program with Sunset Psychological & Counseling Services.

Moorehead violated the conditions of his SSOSA, resulting in one out-of-court agreement and two violation hearings. On four occasions between October 2005 and February 2007, Moorehead violated his travel restrictions. For the last of these violations, Moorehead was confined for 30 days. In March 2006, Moorehead possessed pornography in violation of the SSOSA and his treatment program. Moorehead was also found to have provided false information to corrections officers after he incorrectly stated there was not pornography on his computer. He received 60 days' confinement for these two violations.

In May 2010, Sunset Psychological terminated Moorehead from its treatment program. Kelly Chimenti, a licensed clinical social worker and co-owner of Sunset Psychological, stated that despite over four and one-half years' treatment, Moorehead continued "to engage in resistant and negative behavior." App.[2] D at 48. In addition, Moorehead, who was unemployed, had repeated problems timely paying for his treatment.

Before terminating Moorehead, Chimenti and his community corrections officer, Timothy Larsen, tried to work with Moorehead. On February 24, 2010, Moorehead signed a "treatment contract addendum." App. D at 49. Moorehead was explicitly advised that failure to comply would result in termination of his treatment. Among other things, the addendum required that Moorehead pay the balance he owed for his treatment, make regular payments,

---

[2] "App." refers to the appendices in petitioner's brief.

2

begin an "arousal conditioning"[3] program, attend an employment program, and participate in group meetings. App. D. at 45. Thereafter, Chimenti noted that Moorehead made little effort to comply. On April 6, 2010, Moorehead, Chimenti, and Larsen met, and Moorehead was given another opportunity to comply with treatment conditions.

Despite the opportunity, Moorehead continued to exhibit "resistant and negative behavior." App. D at 48. For example, in late April 2010, Moorehead refused to take a copy of a list of offender friendly employers and then yelled, "Fuck you" at a group member who had told Moorehead he was not helping himself. App. D at 50. Moorehead also did not follow through on providing "updates" concerning his "[a]rousal conditioning." App. D. at 50. Chimenti concluded that "Moorehead cannot or will not appropriately engage and is currently unable to gain any benefit from our program." App. D at 50. She further concluded that despite treatment, Moorehead had not mitigated any factors concerning his reoffense risk.

Shortly after Sunset Psychological terminated Moorehead from treatment, the State moved to revoke the SSOSA. The State alleged that Moorehead failed to comply with treatment conditions, resulting in his termination from treatment. At the revocation hearing, Chimenti testified that the primary reason for terminating treatment was that Moorehead had not mitigated any of his "risk factors." App. E at 116. She said that based on a risk assessment, Moorehead "scores out at a high-risk level." App. E at 116. This was based on an evaluation using the

---

[3] The arousal conditioning was to address a "deviant arousal" that Moorehead had exhibited while undergoing a plethysmograph. App. E at 150.

"Stable" risk assessment tool,[4] on which Moorehead had most recently scored 12 out of 26.[5]

Sunset Psychological started using the Stable tool around 2009 and, according to Chimenti, Moorehead scored an 11 then.[6] Because Sunset Psychological did not use the Stable tool when Moorehead first started, she could not say what his score would have been at that time. Chimenti acknowledged there were periods when Moorehead progressed, but that he would then regress. In her opinion, Moorehead had not, overall, progressed since beginning treatment.

On cross-examination, Moorehead's defense counsel asked questions related to Chimenti's risk assessment of Moorehead. Defense counsel also inquired about Moorehead's problems paying for treatment. Defense called two witnesses: Moorehead's community corrections officer, Larsen, and Moorehead. Larsen testified that Moorehead was considered a

---

[4] According to Dr. David Morgan, a psychologist retained by Moorehead to assist with this appeal, Chimenti was referring to the "Stable-2007," a dynamic risk assessment tool. App. H at 4-5. "Dynamic assessments . . . evaluate current behaviors and attitudes in the offender that may be predictive of future relapse potential." App. H at 5. The advantage to dynamic assessments is that change can be documented over time. The disadvantage is that there can be "considerable subjectivity in the assessment process." App. H at 5. For example, one rater could report that the subject showed hostility towards women, while another could conclude the opposite. Dynamic assessments can be contrasted with static assessments, which do not involve subjectivity because they "use unchangeable, historical factors to predict risk." App. H. at 5.

[5] According to the "Stable-2007 Tally Sheet" in the record, Moorehead's score of 12 out 26 was based on assessments of 13 categories.

[6] The treatment file provided by Moorehead does not contain a record of another Stable assessment. Moorehead asserts this means no other Stable assessment was actually done and Chimenti was wrong. But Moorehead does not establish that the treatment file is complete. A declaration cited by Moorehead in support of his assertion does not constitute competent evidence. In the declaration, a paralegal for the firm representing Moorehead says that she called Chimenti and was told by her that Sunset Psychological had sent all the records pertaining to Moorehead. Chimenti's alleged statement is inadmissible hearsay and this declaration does not adequately support his factual allegation that the treatment file is complete. *See In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). Thus, Moorehead lacks evidence establishing that Chimenti was wrong.

level one sex offender, which meant that he was the least likely to reoffend. Defense counsel asked Moorehead questions mostly related to his finances, unemployment, and difficulty paying for treatment. This testimony supported defense counsel's argument that Moorehead was terminated primarily for his inability to make payments.

During closing arguments, the prosecutor argued that the issue was "not about money." App. E at 194. The prosecutor argued that Moorehead's SSOSA should be terminated because Moorehead had not changed his behavior, was not amenable to treatment, and had been unable to lower his risk factors.

Defense counsel responded in closing argument that it would be arbitrary to rely on risk factors because Chimenti had been unable to quantify what Moorehead's level of risk was when he began treatment. He also argued that Moorehead was terminated for his inability to pay for treatment.

The court revoked the SSOSA. The court stated that its decision had nothing to do with Moorehead's ability to pay for treatment, but rather with the determination that Moorehead was not making progress. The court further noted that it typically had a "zero-tolerance" attitude when it came to SSOSA violations. App. E at 203. Recognizing the two prior violations, the court noted that it had already given Moorehead the opportunity to maintain his SSOSA. Moorehead filed this personal restraint petition, alleging ineffective assistance of counsel.

## ANALYSIS

Moorehead's ineffective assistance of counsel claim rests on two related contentions. He contends that counsel failed to conduct a basic investigation before the revocation hearing and

that counsel should have consulted and retained an expert to testify at the hearing. His argument fails.

The right to counsel is guaranteed at all critical stages of a criminal proceeding, including sentencing. *State v. Robinson*, 153 Wn.2d 689, 694, 107 P.3d 90 (2005). The right to counsel includes the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

To obtain relief on collateral review based on a constitutional error, the petitioner must demonstrate by a preponderance of the evidence that he was actually and substantially prejudiced by the error. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671-72, 101 P.3d 1 (2004). A "petitioner must present evidence showing that his factual allegations are based on more than speculation, conjecture, or inadmissible hearsay." *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). In a personal restraint petition, if the petitioner successfully shows ineffective assistance of counsel, actual and substantial prejudice has been shown. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

To prevail on the claim of ineffective assistance of counsel, the petitioner must prove both deficient performance and resulting prejudice. *Strickland*, 466 U.S. at 687; *Crace*, 174 Wn.2d at 840. Deficient performance is performance falling below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Judicial scrutiny of counsel's performance is deferential and counsel's conduct is presumed to be reasonable. *Strickland*, 466 U.S. at 689. Thus, reviewing courts will make "every effort to eliminate the distorting effects of hindsight." *Rice*, 118 Wn.2d at 888. Prejudice is defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466

U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The trial court may "revoke the suspended sentence at any time during the period of community custody and order execution of the sentence if: (a) The offender violates the conditions of the suspended sentence, or (b) the court finds that the offender is failing to make satisfactory progress in treatment." Former RCW 9.94A.670(10) (2004). The State successfully moved to revoke Moore's suspended sentence on the latter ground.

In support of his contentions, Moorehead submitted a declaration from Amy Muth, an attorney experienced in defending sexual misconduct cases. In Muth's opinion, when a client faces potential revocation of a SSOSA based on treatment issues, it is "the practice of a reasonably competent attorney to retain an expert."[7] App. I at 6-7. An attorney should also request a client's treatment file and review it. Additionally, an attorney should interview the client's current treatment provider to determine why the provider is terminating treatment. According to Muth's declaration, "a reasonably competent attorney would have requested . . . . Moorehead's treatment file, reviewed it, and consulted with a different sex offender treatment provider to evaluate whether . . . Moorehead was high-risk to reoffend, amenable to treatment,

---

[7] According to Muth's declaration, an expert should review the client's treatment file and, if possible, interview the client to determine the following issues: 1) whether the expert agrees with the current treatment provider's assessment of the client's progress in treatment; 2) whether the expert believes the client is amendable to treatment; 3) whether the violation at issue merits revocation of the SSOSA or could be addressed through treatment; 4) what is the expert's opinion of the client's progress in treatment; 5) which outstanding treatment issues does the client need to address; 6) whether the client's risk of reoffense is low, moderate, or high; and 7) whether the expert would be willing to take the client into treatment in place of the current treatment provider. We decline to establish a mandatory procedure for defending against a SSOSA violation.

and whether the provider would be willing to accept . . . Moorehead into treatment." App. I at 10-11.

COUNSEL'S INVESTIGATION

The "presumption of counsel's competence can be overcome by a showing, among other things, that counsel failed to conduct appropriate investigations." *State v. Thomas*, 109 Wn.2d 222, 230, 743 P.2d 816 (1987). Moorehead asserts that his attorney failed to conduct an adequate investigation because he did not review Moorehead's initial SSOSA evaluation and treatment file; did not interview his treatment provider, Chimenti; and did not consult an expert. As to substantiating what Moorehead's attorney did or did not do, Moorehead relies largely on his own declaration. In this declaration, Moorehead states that defense counsel visited him three times. Moorehead alleges that his counsel did not speak to him about obtaining an expert to evaluate his case and that counsel told him that he could not interview Moorehead's treatment provider and staff

Moorehead has not submitted a declaration from his defense counsel or Chimenti to substantiate his contentions. Consequently, defense counsel's actions are unknown. Moorehead's allegations concerning his counsel's investigation are speculative and his representations as to what his attorney said are hearsay. Thus, Moorehead does not establish that his counsel did not consult an expert. While counsel did not call an expert witness at the revocation hearing, this does not mean that counsel did not consult one. Moorehead simply has not provided adequate factual support to substantiate his allegation that his attorney conducted an inadequate investigation. *See Rice*, 118 Wn.2d at 886. Consequently, we reject his argument on this point.

8

DECISION NOT TO CALL AN EXPERT WITNESS

The record does establish that Moorehead's counsel did not call an expert witness, specifically a sex offender treatment provider, in his defense at the hearing. Moorehead argues this constituted ineffective assistance of counsel. In general, "the decision whether to call a witness is a matter of legitimate trial tactics and will not support a claim of ineffective assistance of counsel." *State v. Maurice*, 79 Wn. App. 544, 552, 903 P.2d 514 (1995). However, "depending on the nature of the charge and the issues presented, effective assistance of counsel may require the assistance of expert witnesses to test and evaluate the evidence against the defendant." *State v. A.N.J.*, 168 Wn.2d 91, 112, 225 P.3d 956 (2010).

Counsel's failure to call a witness cannot constitute deficient performance if the decision was a legitimate trial tactic. *Maurice*, 79 Wn. App. at 552. The State argues that Moorehead's attorney made a legitimate tactical decision to argue that Moorehead's termination was for his problems paying for treatment. We agree.

Having seen the written reports and knowing there had been prior violations, Moorehead's defense counsel could have reasonably determined that the best strategy here was to argue that his treatment termination was because he could not pay. It was reasonable for defense counsel to conclude that this was Moorehead's strongest argument.[8] Moorehead, who had been unemployed since being laid off in November 2008, had difficulty paying for his treatment. The termination report authored by Chimenti is peppered with references about

---

[8] One of the difficulties in evaluating ineffective assistance claims is that in the absence of testimony of trial counsel, the court has no way of knowing whether a particular strategy was adopted after consultation with the defendant and a reasoned assessment made as to whether an alternative strategy is more detrimental to the defendant's position—particularly if such a strategy opens the client up to further evaluation or would require testimony by the defendant to establish the defense.

repeated problems paying for his treatment on time. For example, an entry from March 2010 states that "Mr. Moorehead was confronted about his failure to comply with the treatment agreement regarding his payment." App. D at 49. Another entry from April 2010 says Moorehead was given "two weeks to come up with the money to pay off his balance" and was put on written notice that his failure to adequately address his account balance would be a basis for terminating treatment. App. D at 49. Consistent with these entries, Chimenti admitted on cross-examination that Moorehead could be terminated from treatment for nonpayment. Chimenti also stated that Moorehead's inability to pay for treatment was "an issue." App. E at 148. Chimenti further admitted that when Moorehead was terminated he had owed a balance of $120. While counsel did not convince the court that Moorehead's difficulty in making payments for his treatment was the true reason for his termination, this does not mean his performance was deficient. Had counsel's strategy been successful, Moorehead's SOSSA could not have been properly terminated. *See* former RCW 9.94A.670.

Even were we to decide that counsel's strategy was unreasonable and that he should have called an expert witness at the revocation hearing, Moorehead would still have to show prejudice. Moorehead establishes that an expert could have testified in his favor and called into question Chimenti's assessment. Moorehead relies on a letter from Dr. David T. Morgan, a licensed psychologist and certified sex offender treatment provider. Morgan opines that Chimenti's conclusions on Moorehead's risk of reoffending and amenability to treatment were flawed. However, Morgan also acknowledged that it appeared that Moorehead failed to comply in the months before termination. And while stating that Moorehead was amendable to treatment, Morgan acknowledged Moorehead's recent problems, stating that Moorehead would

likely be successful "with an improved attitude and stronger commitment." App H. at 7. He reiterated that "*with an improved attitude and motivation,* . . . Moorehead should be permitted to resume such treatment." App. H at 7 (emphasis added).

Moorehead had also violated conditions of his SSOSA in the past. Given Moorehead's previous violations and the apparent agreement that Moorehead had a poor attitude, was not compliant, and lacked motivation, we are unconvinced that there is a reasonable probability that expert testimony would have changed the result of the revocation hearing. We hold that Moorehead fails to show that counsel was ineffective in conducting his investigation or for not calling an expert witness and, thus, he has failed to show that he was actually and substantially prejudiced by the alleged error. *Davis*, 152 Wn.2d at 671-72.

Moorehead additionally argues counsel was ineffective for failing to argue that he was entitled to credit for the time he served on community custody before revocation of his suspended sentence. After Moorehead filed his brief, our Supreme Court resolved this issue in the State's favor. *State v. Pannell*, 173 Wn.2d 222, 224, 267 P.3d 349 (2011) (holding that defendant was not entitled to credit against his sentence for time spent in the community under a SSOSA before his suspended sentence was revoked). *Pannell* is controlling. We reject

No. 42377-4-II

Moorehead's argument on this point. We deny the petition.[9]

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Forbes, J.P.T.

We concur:

Quinn-Brintnall, J.

Johanson, J.

---

[9] Because there are not disputed issues of fact, we do not order a reference hearing. *See Rice*, 118 Wn.2d at 886-887.